# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| RAYMOND J. ZBYLUT, | ) |
| Plaintiff, | ) 8:10CV378 |
| V. | ) |
| MICHAEL J. ASTRUE, Commissioner of Social Security, | ) MEMORANDUM AND ORDER |
| Defendant. | ) |

Plaintiff Raymond J. Zbylut ("Zbylut') claims in this Social Security appeal that the Commissioner's decision to deny him disability insurance benefits is contrary to law and not supported by substantial evidence. The Commissioner's decision will be affirmed.

## BACKGROUND

On June 30, 2005, Zbylut filed an application for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401, *et seq*., alleging that he was unable to work due to a combination of mental and physical impairments, including paranoid psychotic disorder, delusional disorder, depression, post-traumatic stress disorder ("PTSD"), sleep apnea, carpal tunnel syndrome, osteoarthritis, persistent cough, hyperlipidemia and hypertension. (Tr. 98-103.) Zbylut's application was denied initially and on reconsideration, and he appealed its denial to an administrative law judge ("ALJ").

Administrative hearings were held on November 16, 2007, March 3, 2008, and March 31, 2008. (Tr. 23, 31, 563.) Zbylut was present at the hearings and testified. Anita Howell, a vocational expert, appeared at the March 31, 2008 hearing and testified. (Tr. 542.)

The ALJ issued an unfavorable decision on May 5, 2008, concluding that Zbylut is not disabled under sections 216(i) and 223(d) of the Social Security Act. (Tr. 41.) In his decision, the ALJ evaluated Zbylut's claim by following the five-step sequential analysis

prescribed by the Social Security Regulations.[1]  *See* 20 C.F.R. §§ 404.1520 and 416.920.  In doing so, the ALJ found, in summary, as follows:

1. Zbylut meets the insured status requirements of the Social Security Act through December 31, 2011.  (Tr. 44.)

2. Zbylut has not engaged in substantial gainful activity since February 15, 2005, the alleged onset date.  (*Id.*)

3. Zbylut has the following severe impairments: paranoid personality disorder, a depressive disorder with manic features, hearing loss, sleep apnea, arthritis with recent C5-C7 degenerative joint disease with narrowing disc, high blood pressure that is controlled with medications, high cholesterol and triglycerides that is controlled with medications, carpal tunnel syndrome and a history of substance use.  (*Id.*)

4. Zbylut does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix I.  (Tr. 45.)

---

[1] The Social Security Administration uses a five-step process to determine whether a claimant is disabled.  These steps are described as follows:

> At the first step, the claimant must establish that he has not engaged in substantial gainful activity. The second step requires that the claimant prove he has a severe impairment that significantly limits his physical or mental ability to perform basic work activities. If, at the third step, the claimant shows that his impairment meets or equals a presumptively disabling impairment listed in the regulations, the analysis stops and the claimant is automatically found disabled and is entitled to benefits. If the claimant cannot carry this burden, however, step four requires that the claimant prove he lacks the [residual functional capacity] to perform his past relevant work. Finally, if the claimant establishes that he cannot perform his past relevant work, the burden shifts to the Commissioner at the fifth step to prove that there are other jobs in the national economy that the claimant can perform.

*Gonzales v. Barnhart*, 465 F.3d 890, 894 (8th Cir. 2006).

2

5. Zbylut has the residual functional capacity to perform light work as defined in 20 C.F.R. 404.1567(b), except that he can stand five hours a day and can stand at one time one-half hour before needing to sit down for five minutes, but he would not need to be off task (rest) during that time. When seated, he requires the ability to elevate his feet from six-to-nine inches from the floor.

    He cannot push or pull levers repetitively with lower extremities bilaterally, or crawl, and he can only occasionally stoop, squat, kneel or climb.

    He can occasionally use air or vibrating tools or motor vehicles.

    He can use a stylus or pen. He can pick up a hammer without limitation, but can occasionally use hand tools to grip or grasp, e.g., a steering wheel, screw driver, or hammer in a torque movement (other than picking it up), or using a hammer would be problematic when gripping and using it to hit something.

    He cannot work at unprotected heights.

    He requires a clean environment. It need not be antiseptically clean, but should be similar to an office environment. He cannot work in a factory-like environment with uncontrolled dust floating in the air, or fumes.

    Because of his hearing losses he cannot work in close proximity to loud noises, e.g., he can hear regular conversations at ten yards away, but he would have difficulty hearing even in a loud office.

    He cannot work in temperature extremes of cold, heat, and humidity.

    His ability to interact with the public is mildly limited (meaning a slight limit whereby he can still function well). More specifically, he can have contact with the public in situations that involve simple communications that can be asked quickly, such as directions, book materials, or information. If he is required to respond to multiple or consecutive questions, or when the information he provided is questioned, his limitation would rise to a marked limit.

    Zbylut would have a mild-to-moderate limitation interacting with coworkers and supervisors, depending upon whether his opinions were questioned. For example, if the communications are brief or superficial and related to a job duties or functions, he would have a mild limitation, but, as explained above, where a difference of opinion exists, the limitation would rise to moderate

3

>(which would result in a delay in answering the question, but not prevent adequate functioning) and/or possibly a marked limitation (which would prevent adequate functioning). However, if instructions for tasks are clear cut, he would have only a mild limitation, using the functional examples explained above and in the preceding paragraphs.
>
>If required to make judgments on tasks that include several steps and independent decision-making that is subject to interpretation, the limitation rises to a high level of moderate. If the judgment is a few steps, the limit is from mild to the low-end of moderate, again as explained above.
>
>Responding to unusual work situations in routine work settings are mildly-to-moderately limited depending upon complexity. For example, if his routine work setting involves work at a cubicle and he was asked to go to another location, or where the equipment and supplies were located differently, or involved changes in his bodily motions to reach tools, supplies or equipment, it would initially be disruptive, but by the end of the morning shift, he could adequately perform the job.
>
>Regarding adapting or responding to changes, he would be mildly to moderately limited. For example, if working at a conveyer belt, if he had to change how he moved his arms to fill a box, or had to take a different route to complete a task, or adjust inserting items in a box, it would require repeated questions about his job functions to his supervisor. By the end of the four hour morning shift, he would no longer have a problem functioning. (Tr. 46-47.)

6. Zbylut is unable to perform any past relevant work. (Tr. 51.)

7. Zbylut was born on April 5, 1955, and was 50 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date. (*Id*.)

8. Zbylut has limited education and is able to communicate in English. (*Id*.)

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that Zbylut is "not disabled" whether or not he has transferable job skills. (*Id*.)

10. Considering Zbylut's age, education, work experience and residual functional capacity, there are jobs that exist in significant numbers in the national economy that he can perform. (*Id*.)

11. Zbylut has not been under a disability, as defined in the Social Security Act,

4

from February 15 2005, through the date of the decision.  (Tr. 52.)

On June 3, 2008, Zbylut requested review of the ALJ's decision by the Appeals Council.  (Tr. 10.)  At that time, Zbylut submitted additional evidence to the Council for consideration.  Zbylut's request for review was denied on August 23, 2010.  (Tr. 4.)  Thus, the ALJ's decision stands as the final decision of the Commissioner of Social Security.

## ANALYSIS

A denial of benefits by the Commissioner is reviewed to determine whether the denial is supported by substantial evidence on the record as a whole.  *Hogan v. Apfel*, 239 F.3d 958, 960 (8th Cir. 2001).  "Substantial evidence" is less than a preponderance, but enough that a reasonable mind would find it adequate to support the Commissioner's conclusion.  *Id.* at 960-61; *Prosch v. Apfel*, 201 F.3d 1010, 1012 (8th Cir. 2000).  Evidence that both supports and detracts from the Commissioner's decision must be considered, but the decision may not be reversed merely because substantial evidence supports a contrary outcome.  *See Moad v. Massanari*, 260 F.3d 887, 890 (8th Cir. 2001).

This court must also review the decision of the Commissioner to decide whether the proper legal standard was applied in reaching the result.  *Smith v. Sullivan*, 982 F.2d 308, 311 (8th Cir. 1992).  Issues of law are reviewed de novo.  *Olson v. Apfel*, 170 F.3d 820, 822 (8th Cir. 1999); *Boock v. Shalala*, 48 F.3d 348, 351 n.2 (8th Cir. 1995).

Zbylut makes several arguments on appeal.  First, Zbylut contends that the ALJ improperly substituted his opinion for that of Zbylut's treating physicians and, in doing so, incorrectly assessed his residual functional capacity ("RFC").[2]  Zbylut argues further that the ALJ's hypothetical question to the vocational expert was inaccurate as it did not include all of his impairments.  Zbylut also asserts that the Appeals Council erred in its review of the ALJ's decision because it failed to evaluate the new evidence that he submitted.  Finally,

---

[2] RFC, or "residual functional capacity," is what the claimant is able to do despite limitations caused by all of the claimant's impairments.  *Lowe v. Apfel*, 226 F.3d 969, 972 (8th Cir. 2000) (*citing* 20 C.F.R. § 404.1545(a)).

5

Zbylut maintains that the ALJ failed to analyze his credibility pursuant to *Polaski v. Heckler*, 739 F.2d 1320, 1321-22 (8th Cir. 1984). As explained below, the court finds each of Zbylut's arguments unpersuasive.

### *1. Evaluation of Medical Evidence & RFC Assessment*

Zbylut's primary argument on appeal is that the ALJ improperly evaluated the medical evidence of record[3] and, in doing so, inaccurately assessed his RFC. Specifically, Zbylut complains that the ALJ erred by substituting his opinion for that of his treating physicians. "A treating physician's opinion is given controlling weight if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence." *Medhaug v. Astrue*, 578 F.3d 805, 815 (8th Cir. 2009) (quotation omitted). However, a treating physician's opinion "does not automatically control in the face of other credible evidence on the record that detracts from that opinion." *Heino v. Astrue*, 578 F.3d 873, 880 (8th Cir. 2009) (quotation omitted). "An ALJ may credit other medical evaluations over that of the treating physician when such other assessments are supported by better or more thorough medical evidence." *Id.* (quoting *Prosch v. Apfel*, 201 F.3d 1010, 1014 (8th Cir. 2000). *See also Hacker v. Barnhart*, 459 F.3d 934, 937 (8th Cir. 2006) (stating that in order for a treatment physician's opinion to have controlling weight, it must not be inconsistent with the other substantial evidence in the case record); *Goff v. Barnhart*, 421 F.3d 785, 790-91 (8th Cir. 2005) (stating that "an appropriate finding of inconsistency with other evidence alone is sufficient to discount [a medical] opinion."). Having reviewed the matter, the court concludes that the ALJ properly considered and weighed the medical evidence.

Zbylut complains that the ALJ erred by failing to give substantial weight to the opinion of his treating psychologist, Dr. Constance Logan ("Dr. Logan"), and, additionally,

---

[3] From the briefing submitted to the court, it does not appear that Zbylut disputes the ALJ's findings with respect to his general physical condition as his arguments focus on the ALJ's mental findings. To the degree, if any, that Zbylut argues that the ALJ's findings with respect to his general physical condition were improper, the court concludes that the argument is without merit.

6

that the ALJ failed to explain the consideration given to Dr. Logan's opinion. In August, 2005, a few months after Zbylut's alleged disability onset date, Dr. Logan opined that Zbylut suffers from a paranoid psychotic disorder and, at that time, due to his functioning, would have difficulty with a group treatment model. (Tr. 298.) However, in December, 2005, Dr. Logan assigned Zbylut a global assessment of functioning ("GAF")[4] score of 68, which is indicative of mild symptoms, and determined that Zbylut's depression was in remission. (Tr. 370.) Moreover, in January of 2006, Dr. Logan assessed a GAF score of 70 and opined that Zbylut could return to work. (Tr. 362-63.) In May of 2007, Dr. Logan again gave Zbylut a GAF score of 70. (Tr. 344.)

Although the ALJ did not refer to Dr. Logan by name in evaluating the medical evidence, it is clear that Dr. Logan's opinion was considered and relied upon. In his decision, the ALJ mentioned Dr. Logan's opinion that Zbylut would have difficulty with group treatment and, consistent with Dr. Logan's opinion, found that Zbylut was mildly to moderately limited at interacting with supervisors and coworkers. (Tr. 47, 49.) The ALJ also noted that Zbylut had continued his mental health treatment and, that by May, 2007, Dr. Logan had assigned Zbylut an improved GAF score. The ALJ further included in his decision Dr. Logan's conclusion that Zbylut's depression was in remission. (Tr. 49.) It is true that Dr. Logan once opined that Zbylut suffers from a paranoid psychotic disorder, however, Zbylut appears to ignore the significant progress documented in Dr. Logan's later progress notes. The ALJ's decision is, in fact, consistent with Dr. Logan's conclusions.

Zbylut also claims that the ALJ erred in giving "little weight" to the opinion of Dr. Raymond Heller ("Dr. Heller"), his primary health physician, with respect to Zbylut's mental health. In a March 2008 questionnaire, Dr. Heller, who is not a mental health specialist, indicated that Zbylut could not meet competitive standards or was seriously limited in twelve of twenty-five areas of mental functioning. (Tr. 392-93.) Dr. Heller opined that Zbylut

---

[4] The *Diagnostic and Statistical Manual of Mental Disorders,* Fourth Edition, Text Revision (DSM-IV-TR) states that the GAF scale is used to report the clinician's opinion as to an individual's level of functioning with regard to psychological, social, and occupational functioning. *See* DSM-IV-TR 34 (4th ed. 2000). Scores of 61 to 70 indicate mild symptoms. *Id*. A score of 51 to 60 indicates moderate symptoms, while a score of 41 to 50 corresponds with serious symptoms. *Id*.

would miss work more than four times a month. (Tr. 393.) Dr. Heller further found that Zbylut was unable to meet competitive standards to do unskilled work to complete a normal workday and workweek without interruptions from psychologically based symptoms; accept instructions and respond appropriately to criticism from supervisors; get along with co-workers or peers without unduly distracting them or exhibiting behavioral extremes; and deal with normal work stress. (Tr. 392.) With respect to semiskilled and skilled work, Dr. Heller opined that Zbylut was unable to meet competitive standards in the following areas: carry out detailed instructions and deal with stress of semiskilled or skilled work; understand and remember detailed instructions and set realistic goals or make plans independently of others. (Tr. 393.)

The ALJ did not err in assigning little weight to Dr. Heller's assessment. As stated by the ALJ, Dr. Heller's opinion is inconsistent with other evidence of record. The medical evidence, which was detailed by the ALJ, shows that Zbylut's mental condition improved with treatment and that he received GAF scores of 65 or better from December 2005 onward, consistent with only mild limitations. (Tr. 49, 344, 346, 348, 366, 372.) Psychiatrists Dr. Cheryl Buda ("Dr. Buda") and Dr. Praveen Fernandes ("Dr. Fernandes"), as well as Dr. Logan, each assigned Zbylut GAF scores in this range. (Tr. 344, 346, 372.) Dr. Logan and Dr. Fernandes also found that Zbylut could return to work. (Tr. 344, 362.) The opinions of these mental health specialists do not support the marked limitations found by Dr. Heller. Dr. Heller's status as a general practitioner also influenced the weight that the ALJ gave to Dr. Heller's opinion. (Tr. 50.) *See* 20 C.F.R. § 404.1527(d)(5) ("We generally give more weight to the opinion of a specialist about medical issues related to his or her area of specialty than to the opinion of a source who is not a specialist."). The ALJ did not err in discounting Dr. Heller's opinion.

The ALJ's RFC assessment is also consistent with the medical evidence of record. Zbylut argues that the ALJ erred by ignoring limitations found by the Nebraska Disability Determination Services ("DDS") physicians and his treating health providers when formulating his RFC. However, as explained above, the ALJ properly discounted Dr. Heller's opinion and considered, and relied upon, Dr. Logan's conclusions. Moreover, the ALJ's decision is not, as Zbylut claims, inconsistent with the opinions of the DDS physicians, who concluded that Zbylut could handle simple instructions and perform simple,

8

unskilled work. (Tr. 206-08, 333.) Further, the medical evidence shows that several mental health specialists have opined that Zbylut suffers from only mild limitations. This evidence substantiates the ALJ's RFC assessment, as well as his ultimate conclusion that Zbylut is not disabled. In short, there is sufficient evidence in the medical record supporting the ALJ's RFC determination.

In view of the findings that the ALJ properly considered the medical evidence of record and assessed Zbylut's RFC, the court concludes that the hypothetical question posed to the vocational expert adequately reflected Zbylut's impairments and constitutes substantial evidence in support of the ALJ's decision.

### *2.    Additional Evidence*

Following the ALJ's decision, Zbylut submitted a Medical Opinion Report completed by Dr. Fernandes to the Appeals Council. Although this evidence was not presented to the ALJ, where the Appeals Council considers new evidence, but denies review, the court must determine whether the ALJ's decision was supported by substantial evidence, including the new evidence. *See [Davidson v. Astrue, 501 F.3d 987, 990 (8th Cir. 2007)](.).* In the Medical Opinion Report, dated April 28, 2008, Dr. Fernandes opined that Zbylut would miss work more than four times a month. (Tr. 189-90.) He further opined that Zbylut was unable to meet competitive standards to do unskilled work in the following areas: maintain regular attendance and be punctual within customary, usually strict tolerances and complete a normal work day and work week without interruptions from psychologically based symptoms. (Tr. 189.) Dr. Fernandes also found that Zbylut was unable to meet competitive standards to do semiskilled and skilled work in the following areas: carry out detailed instructions and deal with stress of semiskilled and skilled work. (Tr. 190.)

The court finds that the opinions rendered by Dr. Fernandes in the Medical Opinion Report do not undermine the ALJ's conclusions. The opinions contained in the Report are inconsistent with prior treatment records and conclusory in nature. In February 2008, Zbylut returned to see Dr. Fernandes. At that time, Dr. Fernandes found that Zbylut appeared to have a recurrence of depression, with decreased interest and increased irritability and isolative behavior. (Tr. 499-501.) He further opined that Zbylut's PTSD symptoms had been

9

reactivated. Nevertheless, Dr. Fernandes assigned Zbylut a GAF score of 70 and pronounced him fit to return to work as a shipping engineer. (Tr. 501.) Less than three months later, however, and apparently without re-examining Zbylut, Dr. Fernandes completed the Medical Opinion Report indicating that Plaintiff was severely limited in several areas. The Medical Opinion Report does not list any diagnoses, explain any conclusions or even define the applicable time frame for the opinion. Therefore, despite this new assessment provided to the Appeals Council, the ALJ's decision is still supported by substantial evidence.

### 3.   *Credibility*

Zbylut maintains that the ALJ did not properly apply *Polaski v. Heckler*, 739 F.2d 1320 (8th Cir. 1984) in assessing the credibility of his subjective complaints. Under *Polaski*, in assessing a claimant's credibility, the ALJ must consider the claimant's daily routine; duration, frequency, and intensity of the pain; precipitating and aggravating factors; dosage, effectiveness, and side effects of medication; and functional restrictions. *Polaski*, 739 F.2d at 1322. Reading the ALJ's decision in its entirety, it is clear that the ALJ made the appropriate considerations when evaluating Zbylut's credibility.

The ALJ stated that, based on the evidence as a whole, he had concluded that Zbylut's testimony regarding the intensity, persistence and limited effects of his symptoms were not credible. (Tr. 48.) The ALJ then proceeded to discuss how the objective evidence and medical opinions shed doubt on Zbylut's credibility. For instance, the ALJ pointed to Zbylut's improved GAF scores and the fact that treating sources had concluded that his depressive disorder was in remission. (Tr. 49.) The ALJ further observed that Dr. John Hurley, a rheumatologist, reported that Zbylut had some degenerative changes in his hands, but no active disease of the wrists, elbows or shoulders and had a full range of motion of his hips, knees, ankles and feet. (Tr. 49.) The ALJ also noted that although Zbylut has been diagnosed with asthma, a pulmonary function test revealed that Zbylut did not have a significant breathing disorder. Additionally, the ALJ observed that Zbylut's medical treatment has essentially been routine and conservative in nature. (Tr. 51.) The ALJ further noted Zbylut's testimony that he could perform a job that involved lifting twenty pounds for up to two hours of the workday, and standing for five to six total hours with frequent sitting breaks. (Tr. 48, 521.) Throughout his decision, the ALJ discussed inconsistencies that

detracted from Zbylut's credibility.

The ALJ is responsible for deciding questions of fact, including the credibility of a claimant's subjective testimony about his or her limitations. *See Gregg v. Barnhart*, 354 F.3d 710, 713 (8th Cir. 2003). "If an ALJ explicitly discredits the claimant's testimony and gives good reason for doing so, we will normally defer to the ALJ's credibility determination." *Id.* at 714. In this case, the ALJ pointed to substantial evidence in the record supporting his decision to discount Zbylut's allegations. As such, this court defers to the ALJ's credibility finding.

## CONCLUSION

For the reasons stated, and after careful consideration of each argument presented in Zbylut's brief, I find that the Commissioner's decision is supported by substantial evidence on the record as a whole and is not contrary to law.

Accordingly,

**IT IS ORDERED** that judgment shall be entered by separate document providing that the decision of the Commissioner is affirmed.

**DATED July 22, 2011.**

        **BY THE COURT:**

        **S/ F.A. Gossett, III**
        **United States Magistrate Judge**